[Civ. No. 22079.   Second Dist., Div. Two.   July 1, 1957.]

MARILYN J. DUCHARME, Appellant, v. ROBERT L. DUCHARME, Respondent.

David L. Mohr and Perry Bertram for Appellant.

Robert L. Ducharme, in pro. per., for Respondent.

FOX, J.—This is an appeal from an order (1) modifying a custody decree by changing custody of two minor children from their mother to their father; and (2) retroactively terminating support for the children.

The appeal is presented on a very brief settled statement. However, it includes the report and recommendation (in evidence by stipulation) of the court assistant appointed to investigate the matter.

Plaintiff and defendant were married in August, 1948, and lived together until early in 1952. Plaintiff filed suit for divorce in April of that year, and an interlocutory decree was granted to her the following August. By this decree plaintiff was awarded custody of the two boys, Dale, now approximately 6 years of age, and Darryl, about 8½. Defendant was ordered to pay $75 a month for their support, and was granted the right of reasonable visitation. A final decree was entered on August 14, 1953.

On August 18, 1953, plaintiff married Frank Drye, who was "predominantly of Negro blood." Eleven days later plaintiff bore him a child. Plaintiff and the children lived with Drye in a mixed neighborhood until October, 1954, when she separated from him and, together with the two children here involved, went to live with her maternal aunt, Mrs. Knittle, in a two-bedroom home where she has since resided. She filed suit for divorce from Drye in August, 1955. The custody of the child of that marriage was awarded to the father, "as the mother felt it would be better to allow the child to remain with the father because the child is of mixed blood."

During the latter part of July, 1955, defendant made arrangements with plaintiff to take the children for the summer. They were not thereafter returned to her, although plaintiff had requested their return. Defendant testified that he took the children after receiving a call from plaintiff's aunt, Mrs. Knittle. This conversation is reported by the court assistant, to the effect that "the maternal aunt [Mrs. Knittle] asked him to do something because the mother had another man in the home and was living with him in the presence of the children." Mrs. Knittle, however, denied having had such a conversation with defendant. Nevertheless, it does appear that plaintiff was keeping company with a man who was employed as a milkman. She testified that "on three occasions when they had been out together and arrived home fairly late, she retired to her room with the children, but he lay down on the living room sofa to nap until it was time for him to go to work." Mrs. Knittle testified that "she was present on all three occasions and did not retire until after the milkman went to work."

Defendant arranged with Mr. and Mrs. Mortensen to live in their home with the boys. The Mortensens have a four-bedroom house in Reseda, California, one room of which is used by the two boys and one room by the defendant. The Mortensens have no children, and Mrs. Mortensen is not employed outside the home; she cares for the children during defendant's absence at work. One of the persons interviewed by the court assistant stated that she knows that "Mrs. Mortensen is giving the children proper care." Defendant plans to keep the children in the Mortensen home; he feels that they are "well supervised by Mrs. Mortensen." Mrs. Mortensen reported to the investigator that when the children came to live in her home they were not very clean, and that they were subject to enuresis, but that this condition no longer existed. She also reported that the children had gained weight. This was corroborated by the father, who also stated that he has taken some of the "smart aleckness" out of them. Statements to the investigator indicate that defendant is a good father to the boys. A report from the principal of the school states that "Darryl is making an excellent adjustment"; he is "well cared for" and is "exceptionally well behaved." Dale, of course, was not of school age at the time the investigation was made in November, 1955.

The court commissioner who heard the case found that the best interests of the children required that their custody be awarded to the defendant, with right of reasonable visitation on the part of the plaintiff, and that the order requiring defendant to pay $75 a month to plaintiff for their support be terminated as of July 28, 1955. This order was made on December 8, 1955. Exceptions were taken on behalf of plaintiff, and, after a hearing by Judge Doyle, the recommendations of the commissioner were approved and became the order of the court, from which this appeal is prosecuted.

Plaintiff contends (1) that there is no evidence to support the order changing the custody of the children; and (2) that the court had no power to modify retroactively the order for the support of the children.

In a change of custody case, *Disney* v. *Disney*, 121 Cal.App.2d 602 [263 P.2d 865], this court stated (p. 606) that "In a contest between parents concerning the custody of their minor child neither is entitled to custody as a matter of right. Under the statute (Civ. Code, § 138(2)) each is equally entitled to custody and no showing or finding of unfitness is necessary to enable the court to award custody

to one or the other in accordance with what, in its sound discretion, is deemed the best interest of the child [citation.]''

In *Davis* v. *Davis,* 41 Cal.2d 563 [261 P.2d 729], it is pointed out at page 565 that: ''The court has broad discretion in matters pertaining to the change of custody of children.'' In passing on such questions, ''It is the welfare of the child and not the shortcomings of the respective parties which is determinative.'' (*Young* v. *Young,* 117 Cal.App.2d 735, 738 [256 P.2d 1009]; *Clarke* v. *Clarke,* 35 Cal.2d 259, 262 [217 P.2d 401].) It has been held repeatedly that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony; and, observes the court in *Currin* v. *Currin,* 125 Cal.App.2d 644, 651 [271 P.2d 61], ''this is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts.'' It is the trial court's responsibility to pass on the credibility of witnesses, the weight to which their testimony is entitled, and the inferences to be drawn from the evidence. On appeal it is, of course, the duty of this court to view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the successful party in the court below.

It is settled that, ''an application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion.'' (*Munson* v. *Munson,* 27 Cal.2d 659, 666 [166 P.2d 268].) In another change of custody case, *Kemmer* v. *Kemmer,* 142 Cal.App.2d 233, 236 [298 P.2d 26], this court observed: ''It is, of course, the general rule that to warrant the modification of a custodial order there must be substantial evidence of a change of circumstances after the entry of the original decree. (*Davis* v. *Davis, supra.*) However, it is pointed out in *Foster* v. *Foster,* 8 Cal.2d 719 [68 P.2d 719], that 'the change of circumstances' rule is not an absolutely ironclad rule, and that there might be a case in which, despite the fact that there was apparently no change of circumstances, nevertheless, the welfare of the child might require that the previous order of custody be changed. (P. 728.)''

■ Applying these principles, it cannot be said as a matter of law that the trial court abused its discretion in awarding custody of these two boys to their father. From the evidence, the court could reasonably draw the inference that plaintiff's behavior and care of the children was not conducive to their welfare. On the other hand, the court could properly draw the inference that the children were being well taken care of by the father in the Mortensen home and that their physical and emotional well-being had improved during the few months they had lived in their new environment. In such circumstances, it was proper for the trial court to determine that it was for the best interests of the children to give the father their custody. The change of custody order must, therefore, be affirmed.

■ In 1951 the Legislature amended section 139, Civil Code, by adding the following paragraph: "That portion of the decree or judgment making any such allowance or allowances [for either the wife or children], and the order or orders of the court to enforce the same may be modified or revoked at any time at the discretion of the court except as to any amount that may have accrued prior to the order of modification or revocation." Under the provisions of the latter part of the quoted paragraph, it is apparent that the court had no authority to terminate retroactively, as of "July 28, 1955," the support provision for the children. That order must be modified by striking out that date and inserting in lieu thereof "December 8, 1955," the date on which the order was made.

The portion of the order awarding custody of the minor children to the defendant is affirmed. The part of the order terminating child support as of July 28, 1955, is modified by striking out said date and inserting in lieu thereof the date December 8, 1955. As so modified, it is affirmed.

Moore, P. J., and Ashburn, J., concurred.