Filed 6/27/16  Marriage of Aadam and Suttle CA2/7
Received for posting 6/28/16

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Marriage of MUHAMMAD S.A. and LATIA S.S. AADAM. | B263894 <br><br> (Los Angeles County Super. Ct. No. ND068256) |
| MUHAMMAD S.A. AADAM, <br><br> Respondent, <br><br> v. <br><br> LATIA SUTTLE, <br><br> Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ana Maria Luna, Judge.  Affirmed.

Talitha Davies Wenger; Latia Suttle, in pro. per., for Appellant.

No appearance for Respondent.

_____

Latia Suttle appeals from the May 5, 2015 judgment on reserved issues awarding to Muhammad S.A. Aadam, Latia's[1] former husband, sole legal and physical custody of their five-year-old child, Landon, and restricting Latia to limited supervised visitation with Landon.  Latia contends the trial court failed to consider the mandatory factors identified in Family Code section 3011[2] in determining the best interest of the child; disregarded the mandate of section 3047 that the failure of a party to comply with custody and visitation orders due to military duty shall not, by itself, be sufficient to justify a modification of a custody or visitation order; ignored a domestic violence protective order she obtained in Indiana and registered in Los Angeles Superior Court; and improperly precluded her participation in several phases of the trial.  She also argues the court's factual findings are not supported by the evidence.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Dissolution of the Marriage*

Muhammad was on active duty in the United States Navy when he and Latia married on July 3, 2009.  He subsequently retired as a petty officer second class and was looking for work as a police or correctional officer at the time of trial.  Latia served in the United States Army.  At the time of the dissolution proceedings she had been on a temporary disability retirement list for several years and was periodically reevaluated to determine whether she was fit to return to active duty or would be permanently retired as disabled.

Muhammad petitioned for the dissolution of the marriage on March 21, 2012.  The parties had been married for less than three years and had one child, Landon, born in July 2010.  On September 15, 2014, as an initial part of its trial of the matter, the court entered

---

[1]  As is customary in family law cases, we refer to the parties by their first names for clarity.  Latia's former name, Suttle, was restored in the judgment of dissolution (status only) entered on September 30, 2014.

[2]  Statutory references are to this code unless otherwise indicated.

a judgment of dissolution without objection, reserving jurisdiction on further issues including child custody.

2. *Temporary Custody Orders*

In a temporary custody order on June 19, 2013 Latia was awarded legal and primary physical custody of Landon. Muhammad was granted custodial time with the child one day each weekend from 9:00 a.m. to 3:00 p.m. Shortly thereafter, Latia sought court authorization to relocate with Landon to Indiana. On July 22, 2013 the parties, at the time both represented by counsel, entered into a detailed stipulation, approved by the court, for joint legal custody with Latia to have primary physical custody of Landon in Indiana. The stipulation and court order provided for visitation by Landon with Muhammad during specified holidays and portions of each summer in California, including the balance of the then-current summer (through August 21, 2013) after which Muhammad would take the child to Latia in Indiana. Muhammad was ordered to pay monthly child support of $933 commencing August 15, 2013.

Latia moved with Landon to Indiana prior to August 21, 2013 and did not make the child available to visit with Muhammad during the scheduled 2013 summer period. Latia also failed to provide transportation for Landon to travel to California for holiday visits with Muhammad during the latter part of 2013 and early 2014, as required by the parties' stipulation and court order. In documents filed with the court Latia asserted Muhammad had failed to comply with the requirements of the July 22, 2013 stipulation permitting her to verify his residence address and to visit and examine the home before allowing Landon to visit him.

3. *The Indiana Domestic Violence Restraining Orders*

On June 3, 2014 Latia filed two ex parte petitions for domestic violence restraining orders in the superior court in Hamilton County, Indiana, one intended for her own protection (29D06-1406-PO-005308) and the second to protect Landon (29D06-1406-PO-005309). On June 4, 2014 Judge Gail Z. Bardach of the Hamilton County Superior Court found that Muhammad represented a credible threat to the safety

3

of Latia and entered an order in case no. 29D06-1406-PO-005308 enjoining him from threatening to commit or committing acts of domestic violence against Latia, Landon and Dennis and Pearl Rutledge (Latia's parents) and to stay away from Latia's residence in Fort Wayne, Indiana. The order also prohibited Muhammad from contacting or directly or indirectly communicating with Latia.[3] The ex parte order stated it would remain in effect for two years (until June 3, 2016) but also advised Muhammad he had the right to request a hearing on the issues in the case. The order was personally served on Muhammad on June 30, 2014. An order to register the Indiana order with the Los Angeles Superior Court for entry through the California Law Enforcement Telecommunication System (CLETS) as an out-of-state protective/restraining order was signed and filed on August 8, 2014.

Concurrently with issuing the ex parte domestic violence restraining order on June 4, 2014, Judge Bardach transferred the matter to the Los Angeles Superior Court, which the court explained had jurisdiction of the parties in their dissolution action. The transfer order provided, "This Court's Ex-Parte Order for Protection does not alter the custody or parenting time right of the parties. [Citation.] Any order of the proper court regarding custody, parenting time or possession or control of property shall supersede the order of protection issued by this court. [Citation.] [¶] This transfer in no way affects the expiration date of the separate Ex-Parte order for Protection issued by this Court."

4. *The June 30, 2014 Trial Setting Conference*

At a trial setting conference on June 30, 2014 the court directed Latia, who was now self-represented and participating by telephone, to comply with the July 22, 2013 stipulation and order for visitation from July 16 through August 16, 2014 by having Landon available for Muhammad to pick up on July 16, 2014 at the Fort Wayne International Airport. Latia responded she was facing financial hardship because Muhammad had permitted the destruction of her personal property left in the former

_____

[3] No relief was granted in case no. 29D06-1406-PO-005309.

4

family residence, again referred to Muhammad's failure to provide the required documentation regarding his residence and also told the court she had medical appointments to reevaluate her military disability and surgery scheduled for July 16, 2014. Latia also insisted having contact with Muhammad to deliver the child would violate the domestic violence restraining order issued in Indiana earlier that month.[4]

With respect to the restraining order, the court stated it had attempted to communicate directly with Judge Bardach but, to date, had only reached her court clerk. The court's understanding was that the Indiana court had deferred to the California family law court on all matters relating to visitation and would modify the restraining order to conform to the orders of the California court. The court cautioned Latia, "If the child is not there, there's going to be serious problems. I'll probably entertain an ex parte request to change the custody and visitation and bring that child back here pending trial." Although Muhammad traveled to Indiana on July 16, 2014, Latia did not comply with the order; and no exchange took place.

At the conclusion of the conference the court set the trial date. The court first asked Latia when she could travel to California for the trial. Latia responded, "I'm not

---

[4] Latia advised the court, "On July 16, I'm supposed to get reevaluated as far as the military with my disability. . . . So, that date, I have surgery scheduled, Ma'am. First, there's financial hardship because he destroyed all my property. Second, I have medical appointments and surgery scheduled, and there's the domestic violence issue with threats." Notwithstanding her subsequent descriptions of her comments at this hearing, at no time did Latia advise the court she was under military orders to be at Dwight D. Eisenhower Army Medical Center, Fort Gordon, Georgia on July 16, 2014 for the medical reevaluation.

The June 11, 2014 Department of the Army memorandum directing Latia to report to Fort Gordon on July 16, 2014 was first submitted to the court as an attachment to a three-page declaration filed by Latia on August 14, 2014—four weeks after the court-ordered exchange date—in which she expressed her concerns about the orders made at the June 30, 2014 trial setting conference. The declaration was not part of a motion or response to a motion for new or revised orders and, although filed, does not appear to have been brought to the attention of the court at that time. The memorandum was marked as Exhibit 101 on September 15, 2014, the first day of trial on the reserved issues.

available to show up there in person myself or with child, because of financial reasons, which I have already stated, because of health reasons that I already stated." The court replied, "I'm going to pick a trial date around you. I have given you the opportunity to tell me when you can be here." The court then scheduled trial for September 15, 2014. Latia said she was not available on that date because she had another surgery scheduled. The court authorized Latia's participation at trial by telephone.[5]

5. *Trial of the Custody and Visitation Orders*

Trial of the reserved issues of custody and visitation, child support and division of community property and debts began on September 15, 2014. Muhammad was self-represented. Latia was again represented by counsel. Technical difficulties prevented Latia's participation by telephone although she had attempted to call into court; her counsel did not object to the trial proceeding without her.

At the outset of the trial the court notified the parties it had finally spoken directly to Judge Bardach, who had issued the Indiana domestic violence restraining order. Judge Bardach explained she had transferred both cases in their entirety to California. Accordingly, the extent to which the order continued in effect would be determined in the family law proceedings. The court also stated Judge Bardach had explained under Indiana law a peaceful exchange of the child, as had been ordered to take place on July 16, 2014, would not have violated the restraining order, notwithstanding its no-contact provisions.

Muhammad testified he had originally agreed to allow Landon to live with Latia in Indiana because he believed she intended to cooperate with him in a positive, coparenting relationship. Instead, she had frustrated entirely his ability to see his child, which prompted him to seek the change in custody and visitation orders. Muhammad denied ever threatening Latia and insisted he had never acted violently toward her or Landon.

---

[5] On September 15, 2014 Latia requested a continuance of the trial. The court indicated it would grant the request if Latia would bring Landon to California for a visit with Muhammad. After discussing the matter with her attorney, Latia declined the offer.

6

He acknowledged he had been diagnosed as a sex addict and had been ordered by his superiors in the military to attend classes to address the problem. He testified he was not currently involved in multiple relationships and would put Landon first if he was granted primary custody of the child, taking him to his mosque and making sure he was properly enrolled in school. In response to a question from the court, Muhammad said he would not expose Landon to someone he was dating until it became a serious and committed relationship.

On cross-examination Muhammad identified a memorandum from the Department of the Army directing Latia to appear in Georgia for a medical examination on July 16, 2014, the date the court had ordered Latia to make Landon available at the Fort Wayne airport to travel to Los Angeles with Muhammad. (The document was marked as exhibit 101.) Muhammad pointed out the notice was dated June 11, 2014 and asserted Latia had ample time to notify the court that alternative arrangements needed to be made. Latia's counsel spent considerable time questioning Muhammad about the lease arrangements for the residence where Landon was to visit him in July 2013 and the removal and destruction of Latia's property from the former family residence.[6]

Trial continued on September 30, 2014. Latia participated by telephone. Before Muhammad's cross-examination continued, one of his sisters, Talisa Lucas, testified on behalf of Latia. Lucas testified Latia was a loving mother who was attentive to all of the child's needs. She indicated Landon had serious allergies that required careful supervision and expressed her belief, based on observations when visiting the family, that her brother did not know how to take care of Landon. Two additional witnesses, the property manager for the former family residence and a friend and current roommate of Muhammad, provided additional testimony regarding the issue of Latia's property. Latia then began her direct testimony via telephone.

---

[6] Because Latia's appeal does not challenge any of the court's orders regarding support, expense reimbursement or the division of the parties' property, no summary of the testimony and argument regarding those issues is included.

Latia testified Muhammad was a sex addict who had multiple sexual partners throughout the marriage. He had been ordered to attend classes for sex addiction in 2009 after he was diagnosed with a sexually transmitted disease. According to Latia, Muhammad spent most of his time outside the home and had never cared for Landon on his own. In her opinion Muhammad lacked the self-control necessary to act as Landon's primary caregiver. Latia also described Muhammad's involvement with the sovereign citizen movement during their marriage.[7] When she confronted him about this activity and said she was going to report it to Navy Criminal Investigation Services, Muhammad threatened he would kill both her and Landon if she did. In response to questioning by the court, Latia said this threat had been made in April 2012, after Muhammad filed for dissolution of their marriage but before he moved out of the former family residence.

Trial was continued to November 3, 2014. On that date the court began by stating it had learned, based on an ex parte application filed by Muhammad on October 22, 2014 and a subsequent order dated October 30, 2014 from the Indiana state court, that Latia filed a verified petition to establish paternity and request for child support in Indiana on September 22, 2014. That document, signed under penalty of perjury by Latia, asserted she had not participated as a party or witness in any other litigation concerning the custody of the child, she had no information of any pending custody proceeding concerning the child, and she did not know of a person not a party to the Indiana proceedings who claimed to have custody or visitation rights with respect to the child. (As reflected in the minute order dated November 3, 2014, the October 30, 2014 order of the Indiana magistrate was to dismiss the paternity action and vacate the trial date in the action based on lack of jurisdiction.) "Based on the obvious perjury committed in the Indiana action and the fact that this court needs to assess the credibility of the parties in

---

[7] "The sovereign citizen movement is a loose grouping of litigants, commentators, and tax protesters who often take the position that they are not subject to state or federal statutes and proceedings." (*United States v. Weast* (5th Cir. 2016) 811 F.3d 743, 746, fn. 5.)

8

order to make custody and visitation orders which are in the best interest in the child," as well as the fact Latia had failed to comply with court orders regarding visitation, the court withdrew its permission for Latia to provide testimony telephonically and ordered her to appear in court and to bring Landon with her to California if she intended to continue giving testimony in the case. The matter was continued to November 20, 2014. The court also noted that the restraining order proceedings had been transferred from Indiana to California and advised Latia that she would need to appear in person to testify in support of continuing the temporary order if she wanted it to remain in effect.

Before the court recessed, Latia advised the court she could not come to California for both financial and health reasons. The court then ordered that no further testimony would be received from Latia by telephone with regard to custody and visitation matters in the case. Latia's counsel requested an opportunity for Latia to reconsider her response to the court's directive.

On November 20, 2014, with Latia's counsel present in court and Latia on the telephone, the court stated it had received and reviewed a declaration from Latia explaining she lacked the financial means to travel to California and indicating health-related problems prevented her from bringing Landon to California. The court reiterated its November 3, 2014 ruling that it would not allow any additional telephonic testimony because it could not assess credibility over the phone and because there were serious issues of credibility bearing on the case. The court indicated it would be within its discretion to strike all of Latia's testimony under the circumstances but stated it was not going to do that. "However, the weight that I give to the testimony she's presented so far is greatly reduced in light of the perjured documents submitted in Indiana."

Both sides rested, and the court heard argument from Muhammad and from Latia's counsel. Muhammad requested sole physical custody of Landon with joint legal custody and a restriction that Latia's visits occur in Los Angeles. He also asked the court to cancel the protective orders Latia had obtained in Indiana, emphasizing that Latia had not presented any evidence of threats or abuse during the trial in California. Latia's

9

counsel requested the court continue the prior custody and visitation orders in effect, but limiting Muhammad's visitation to seeing Landon in Indiana, rather than the arrangements contained in the July 2013 stipulation and order. Counsel also urged the court to continue the domestic violence restraining orders, asserting Latia had testified that Muhammad had made threats to hurt her at various times during their relationship. At the conclusion of the hearing the court submitted the matter, advising the parties, "unless I have some other revelation," it intended to award sole legal and physical custody to Muhammad.

6. *The Court's Notice of Ruling and Order Modifying Custody and Visitation*

On February 17, 2015 the court issued a detailed 14-page notice of ruling containing its findings of fact and a lengthy discussion supporting its determination that awarding sole legal and physical custody to Muhammad and limiting Latia to supervised visitation were in the child's best interests.[8] After making findings consistent with the preceding summary of events, the court found, in part, that Latia had consistently failed to comply with the court's orders regarding visitation and had attempted to manipulate court proceedings in Indiana to gain an advantage with regard to custody and visitation orders relating to Landon. The court further found that Muhammad's veracity greatly outweighed Latia's: "[T]he court finds that [Latia] lacks credibility in all respects and declines to put any weight to the testimony she provided at trial."

Paragraph 1 of the Discussion began with the statement, in bold type, "The court shall consider the child's health, safety, and welfare." (See § 3011, subd. (a).) The court then explained its orders promoted the child's health, safety and welfare because, as

---

[8] In its February 17, 2015 notice of ruling the court incorporated by reference its November 3, 2014 minute order containing its decision to terminate Latia's ability to provide further testimony by telephone. In addition, the court took judicial notice of the verified petition to establish paternity and support order, signed by Latia under penalty of perjury on September 14, 2015, filed in Indiana state court on September 22, 2014, and the October 30, 2014 order issued by Magistrate Trevino in the Allen County, Indiana Circuit Court dismissing Latia's petition.

between the two parents, Muhammad "has demonstrated that he is the more child focused parent. . . . [T]he court is assured by the fact that [Muhammad] has patiently and consistently followed court orders which indicates a propensity towards parenting the child in a manner consistent with a respect for authority. The court believes that as between the two parties, [Muhammad] is most likely to conform his behavior so as to be in compliance with the court's orders as set forth below."

Paragraph 2 of the Discussion considered the allegations by Latia that Muhammad had engaged in domestic abuse (see § 3011, subd. (b)(2)) and concluded the court would not apply the presumption in favor of awarding custody to Latia under section 3044, subdivision (a), "because the court finds that [Latia] fabricated the allegations of domestic violence allegedly perpetrated by [Muhammad] in an attempt to gain a tactical advantage as to custody of the minor child." Paragraph 3 evaluated the nature and amount of contact between the child and each parent (see § 3011, subd. (c)), and ruled Landon had been prevented by Latia from bonding with his father. In addition, "[r]egarding ethical, emotional, and intellectual guidance, the court finds these needs are better met by [Muhammad]. [Muhammad] articulated how he plans to care for the child once the child is back in California and that he wishes to foster a relationship between the child and his mother." The court then elaborated on its reasoning, "But for the conduct of [Latia] during the pendency of this action, the court would have adopted verbatim the orders contained in the Stipulation and Order dated July 22, 2013 as the final orders in this matter. Given [Latia's] continued disobedience of the current orders, the court finds it necessary to impose orders which [Latia], to be sure, will find draconian but which can be modified if [Latia] shows compliance and takes certain actions to address her obvious hostility toward [Muhammad]."

In a section labeled "Other Factors" the court found "a high level of conflict emanating from [Latia] toward [Muhammad] which the court can only attribute to [Latia's] unresolved feelings about the breakup of the marriage. [Latia] has shown difficulty co-parenting—making joint decisions and sharing appropriate information

11

about the child—with [Muhammad].  This conflict will likely adversely affect the child. The court is awarding [Muhammad] sole legal and physical custody as the testimony and evidence reflect[] he is the parent who is least responsible for the conflict and best able to make appropriate child-centered decisions. . . .”

The notice of ruling also contained detailed orders requiring Muhammad and Latia to share health care information for Landon (including with respect to his medications), as well as school and daycare information, restricting travel with the child, prohibiting use of alcohol or illegal substances prior to visits, limiting access by Landon to computers and other electronic devices and scheduling weekly email contact between the two parents to discuss issues relating to their child.

Based on its finding that Latia's allegations of domestic violence had been fabricated, the court's notice of ruling also denied any further restraining orders as may have been requested by Latia and terminated, retroactive to June 3, 2014, any temporary restraining orders that remained in effect.

On April 6, 2015 the court mailed to Muhammad and to counsel for Latia its proposed judgment, which incorporated the February 17, 2015 findings and orders (but not the detailed discussion explaining the court's reasoning).  On April 22, 2015 Latia filed objections to the February 17, 2015 notice of ruling and the April 6, 2015 proposed judgment.

The court entered its judgment on reserved issues on May 5, 2015, awarding sole legal and sole physical custody of Landon to Muhammad, permitting Latia supervised visitation in California of four hours per visit with the cost of the trained professional monitor to be paid entirely by Latia and setting forth the detailed orders from the February 17, 2015 notice of ruling regarding communications between Muhammad and Latia.  In its final judgment the court observed that Latia “would benefit from successfully completing individual counseling aimed at management of her anger toward [Muhammad] as well as child-focused decision making.  The court concluded that [Latia] has a significant problem with co-parenting.  That finding played a major role in the

12

court's custody and monitored visitation orders." The court indicated it "would probably consider [Latia's] attending and successfully completing a program consisting of 26 forty-five minute-to-one-hour sessions with a licensed therapist or another community program approved either [by] the state of CA or State of Indiana to address these issues [to be] a significant change of circumstances in changing its custody order. The Court may be unwilling to change its orders until a counseling program is completed."

With respect to the domestic violence restraining orders, the court found the matters had been transferred on June 4, 2014 to be heard as part of the parties' dissolution of marriage action. During the June 30, 2014 trial setting conference, Latia did not request extension or resetting of any of the temporary restraining orders. The court reiterated its view that the request for restraining orders "was a bold attempt to gain leverage in a child custody and visitation dispute." The court concluded that neither Latia's nor Landon's safety would be jeopardized by the decision not to issue the orders.[9]

## DISCUSSION

### 1. *Governing Law and Standard of Review*

"California's statutory scheme governing child custody and visitation determinations is set forth in the Family Code . . . . Under this scheme, 'the overarching concern is the best interest of the child.' [Citation.] [¶] For purposes of an initial custody determination, section 3040, subdivision (b) [now subdivision (c)[10]], affords the trial court and the family '"the widest discretion to choose a parenting plan that is in the best interest of the child."' [Citation.] When the parents are unable to agree on a custody

---

[9] Latia filed separate notices of appeal from the February 17, 2015 notice of ruling/minute order, the April 6, 2015 proposed judgment and the May 5, 2015 final judgment on reserved issues. Neither the February 17, 2015 order nor the April 6, 2015 proposed judgment is an appealable order.

[10] Former section 3040, subdivision (b), was redesignated without change as subdivision (c), effective January 1, 2013. (See Stats. 2012, ch. 845, § 1.) It provides, "This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody, but allows the court and the family the widest discretion to choose a parenting plan that is in the best interest of the child."

arrangement, the court must determine the best interest of the child by setting the matter for an adversarial hearing and considering all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955-956; accord, *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 14; see § 3011, subds. (a) & (b).) On appeal custody orders are reviewed for an abuse of discretion (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 ["[t]he precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child"]), and the trial court's factual findings are reviewed under the substantial evidence standard. (*Id*. at pp. 31-32; accord, *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) We draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence. (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497; *J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 935.)

   2. *The Family Law Court Expressly Considered the Best Interest of the Child and Addressed the Mandatory Factors Identified in Section 3011*

   Section 3011 identifies several factors the family law court must consider, among any others it finds relevant, in making a determination of the best interest of the child in custody proceedings.[11] Although Latia is correct the family law court in this case did not actually cite section 3011, the detailed notice of ruling filed February 17, 2015 quoted its relevant language and addressed each of the mandatory factors it describes for evaluating the best interest of the child: the health, safety and welfare of the child (§ 3011,

---

[11]     Section 3011 provides in part, "In making a determination of the best interest of the child in a proceeding described in Section 3021, the court shall, among any other factors it finds relevant, consider all of the following: [¶] (a) The health, safety, and welfare of the child. [¶] (b) Any history of abuse by one parent or any other person seeking custody against any of the following: [¶] (1) Any child to whom he or she is related by blood or affinity or with whom he or she has had a caretaking relationship, no matter how temporary. [¶] (2) The other parent. [¶] . . . [¶] (c) The nature and amount of contact with both parents . . . ."

subd. (a)); any history of abuse by one of the parents (§ 3011, subd. (b)); and the nature and amount of contact with both parents (§ 3011, subd. (c)).[12] The court also considered how best to provide continuity of attention, nurturing and care and the impact of the conflict between Muhammad and Latia on Landon's well-being. Latia's contention, repeated several times in her brief, that "[t]he court omitted any consideration of the child's best interests" and "did not even make one single best interest finding" is simply wrong.

3. *The Court Did Not Disregard the Mandate of Section 3047*

Section 3047, subdivision (a), provides, "A party's absence, relocation, or failure to comply with custody and visitation orders shall not, by itself, be sufficient to justify a modification of a custody or visitation order if the reason for the absence, relocation, or failure to comply is the party's activation to military duty or temporary duty, mobilization in support of combat or other military operation, or military deployment out of state." Latia contends the court violated this provision by basing its decision to award sole legal and physical custody to Muhammad on her failure to bring Landon to the Fort Wayne airport on July 16, 2014, as the court had ordered on June 30, 2014, even though she established at trial that she was required to report to Fort Gordon, Georgia for medical reevaluation on that date. Latia's argument fails for several reasons.

First, it is by no means clear that the June 11, 2014 memorandum directing Latia, who was no longer on active duty, to undergo a medical examination qualifies as "activation to military duty or temporary duty" within the meaning of section 3047. To the contrary, section 3047, subdivision (g)(1), defines "temporary duty" to mean "the transfer of a service member from one military base to a different location, usually another base, for a limited period of time to accomplish training or to assist in the performance of a noncombat mission." The order that Latia travel out-of-state from her

---

[12] Section 3011, subdivision (d), lists as an additional mandatory factor the habitual or continual illegal use of controlled substances or abuse of alcohol. Neither Muhammad nor Latia contended this factor had any relevance in the custody proceedings.

15

home for an evaluation of her temporary disability appears to fall outside that definition. And the memorandum directing her to be examined by physicians at Fort Gordon certainly was not mobilization or military deployment as those terms are used in the statute. (See § 3047, subd. (g)(1) & (2) ["deployment" involves the temporary transfer of a member of the Armed Forces in active-duty status; "mobilization" involves the transfer of a National Guard or other military reserve member to active-duty status].)

Second, Latia's repeated assertions to the contrary notwithstanding, the record does not reflect that Latia advised the court she was under "military orders" to travel to Georgia on the scheduled exchange date when the court entered its order, or that she provided that information to the court before July 16, 2014 and attempted either to reschedule the exchange or to seek the court's permission for someone else (one of her parents, for example) to complete it for her. As a result, Muhammad was misled into incurring the expense of a pointless trip to Indiana.

Third, and perhaps most importantly, whatever weight the court placed on Latia's failure to comply with its June 30, 2014 order, it was not the sole basis for the court's custody and visitation orders. As the court made plain, it was troubled by Latia's failure to comply with any of the visitation orders, beginning with the initial month-long visit in July-August 2013 contemplated by the parties' stipulation and order of July 22, 2013, and was appropriately distressed by her initiation of a paternity and support action in Indiana containing a perjured declaration that failed to disclose other pending litigation concerning the custody of the child. Section 3047, if applicable at all, does not prohibit the court from considering Latia's conduct as one of several factors justifying the final custody and visitation orders.

4. *The Court Did Not Ignore the Indiana Domestic Violence Restraining Order*

As discussed, on June 4, 2014 the superior court in Hamilton, Indiana issued an ex parte domestic violence restraining order against Muhammad; the order was registered in California on August 8, 2014 and entered through CLETS as an out-of-state protective/restraining order. Far from ignoring the Indiana restraining order when

16

making its custody and visitation determinations, as Latia contends, the family law court was well aware of it and engaged in multiple attempts to contact the issuing court to understand its scope and its impact, if any, on the custody and visitation issues pending in California. After finally communicating directly with Judge Bardach, the family law court explained to the parties that the protective order petitions had been transferred in full to the Los Angeles Superior Court. The court discussed the question of the restraining order in its February 17, 2015 notice of ruling, found that Latia fabricated her claim that Muhammad had threatened her and Landon and concluded Latia had attempted to use the Indiana proceedings to gain leverage in the custody battle. Because the court terminated any still-existing restraining order, there was no violation of the requirements of section 3031, subdivision (a), which directs the court to consider whether any protective order is in effect that concerns the parties or the child and encourages the court not to make a custody or visitation orders that are inconsistent with any valid, outstanding protective or other restraining order.

5. *Latia Was Not Improperly Precluded from Participating in the Dissolution Proceedings*

Latia was unable to participate telephonically during the first day of trial on September 15, 2014 due to technical difficulties. She was prohibited from testifying but allowed to listen to the trial proceedings via telephone on November 20, 2014 after the court ordered that any further testimony from her would have to be presented in person. Neither event warrants reversal of the court's custody and visitation orders.

On the first occasion Latia's counsel was present in court and fully aware that Latia's telephone connection could not be completed. He did not object to the court proceeding with the trial in her absence. Accordingly, any claim of error has been forfeited. (See *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 ["[f]ailure to object to the ruling or proceeding is the most obvious type of implied waiver"]; see generally *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [issues not raised in the trial court cannot be raised for the first time on appeal]; *Kolani v. Gluska* (1998)

17

64 Cal.App.4th 402, 412 [failure to raise issue or argument in the trial court results in forfeiture on appeal].)

On the second occasion, after learning of Latia's "obvious perjury" in her paternity and support filing in Indiana, the court concluded Latia needed to testify in person so the court could properly evaluate her credibility. Latia was then given more than two weeks to make arrangements to come to California to provide live testimony. Whether to allow an individual residing out-of-state to testify by telephone in a child custody proceeding is entrusted to the discretion of the court. (§ 3411, subd. (b).) Given the events that precipitated this ruling and the trial court's wide discretion to control its proceedings (see, e.g., *Little v. Pullman* (2013) 219 Cal.App.4th 558, 570 ["[i]t is beyond dispute that the court may control its processes so as to most efficiently and effectively safeguard judicial economy and administer substantial justice"]; see also Code Civ. Proc., § 128, subd. (a)(3) [court has power to provide for the orderly conduct of proceedings before it]), the withdrawal of permission for Latia to testify telephonically was not an abuse of discretion. (See *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1176 [trial court's refusal to allow witnesses to testify telephonically from Saudi Arabia after expressing concern about the reliability of telephonic testimony was not an abuse of discretion].) "Oral testimony of witnesses given in the presence of the trier of fact is valued for its probative worth on the issue of credibility, because such testimony affords the trier of fact an opportunity to observe the demeanor of the witnesses." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1358. "A witness's demeanor is '"part of the evidence"' and is 'of considerable legal consequence.'" (*Ibid.*)

Latia also contends the court engaged in improper ex parte communications at the trial setting conference on June 30, 2014. The reporter's transcript from the morning session on that date shows that Muhammad and his counsel were present when the case was called and the court stated, "Miss Aadam has already called in once based on the court's direction to call in at 10:30." It appears Latia was not participating by telephone at that time, yet the court proceeded to update Muhammad on its efforts to contact Judge

18

Bardach in Indiana concerning the domestic violence restraining order and conducted a short discussion concerning Muhammad's scheduled summer visit with Landon. When the afternoon session began, Latia was "present, calling in from Indiana." The court provided a brief explanation of what had been discussed in Latia's absence during the morning session and then asked Latia if she wanted to respond "with regards to anything I relayed to you so far." Latia then addressed the issues the court had raised, as summarized above. In light of Latia's ability to fully discuss her position with respect to the matters considered at the trial setting conference, any procedural error in proceeding in her absence in the abbreviated morning session was harmless. (See Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; Code Civ. Proc., § 475 ["[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also by reason that such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"]; *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 526-527 [applying harmless error standard in dissolution proceedings].)

6. *Substantial Evidence Supports the Family Law Court's Orders*

Although Latia contends, mistakenly, the trial court violated or disregarded various statutory requirements in resolving the parties' custody dispute, her fundamental challenge to the orders awarding sole legal and physical custody to Muhammad and restricting her to supervised visitation is that the court's findings were without evidentiary support and, as a consequence, there was no reasonable basis on which the court could conclude its decision advanced Landon's best interests. (See *In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32.) In evaluating this argument, our review is

19

governed by well-established principles: "It has been held repeatedly that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony; and, . . . 'this is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts.' It is the trial court's responsibility to pass on the credibility of witnesses, the weight to which their testimony is entitled, and the inferences to be drawn from the evidence. On appeal it is, of course, the duty of this court to view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the successful party in the court below." (*Ducharme v. Ducharme* (1957) 152 Cal.App.2d 189, 193; see *Sanchez v. Sanchez* (1961) 55 Cal.2d 118, 126 ["There were, as is not unusual in a proceeding of this nature, conflicts both as to probative facts and as to the proper inferences to be drawn from such facts. But, as is true in all appellate reviews, and most emphatically in this type of controversy, it is not the function of this court to reweigh conflicting evidence and redetermine findings; neither is this court vested with discretion to be exercised in the premises. Our function has been fully performed when we find in the record substantial evidence which supports the essential findings of the trial court."]; see also *In re Marriage of Fajota*, *supra*, 230 Cal.App.4th at p. 1497.)

Utilizing this highly deferential standard of review, the record in this case, as set forth in our summary of the trial proceedings, provides ample support for the court's factual findings; and those findings, in turn, support the court's exercise of discretion in awarding sole legal and physical custody to Muhammad with limited, supervised visitation for Latia. The trial court was entitled to disregard Latia's testimony and give it no weight based on its assessment of her credibility and to believe Muhammad's testimony. Having expressly done so, substantial evidence supports the court's findings that Latia intentionally frustrated Muhammad's visitation rights in direct violation of court orders and that she could not be relied upon to comply on a going-forward basis

20

with the court's orders regarding coparenting, as well as its implied findings that Muhammad's admitted sex addiction and lack of prior involvement in caring for Landon would not interfere with his ability to serve as the child's primary caregiver. The record also supports the court's finding that Muhammad offered positive plans for Landon's ethical, emotional and intellectual development, while Latia had acted, and would likely continue to act, in a manner that prevented the child from bonding with his father.

The need for monitored visitation was less developed in the record, but the court explained its order was based on the finding that Latia had a significant problem with coparenting and its conclusion she would greatly benefit by participation in counseling and/or parenting classes. As the court observed, once Latia completed a six-month program (26 sessions) addressing the issues in the case, it would likely change the custody and visitation orders to more closely parallel the arrangements in the parties' July 22, 2013 stipulation. There was no abuse of discretion.

## DISPOSITION

The May 5, 2015 judgment is affirmed. Because Muhammad did not appear in the appellate proceedings, no costs are awarded.

PERLUSS, P. J.

We concur:

SEGAL, J.                    BLUMENFELD, J.[*]

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21